# EXHIBIT A

1

2

3

4

5

6

7

8

9

10

11

**SUPERIOR COURT OF WASHINGTON**
**FOR KING COUNTY**

12

13

LAURIE MUNNING,
for Herself and On Behalf Of
All Others Similarly Situated,

14

Plaintiff,

15

v.

16

NORDSTROM, INC.,
And DOES 1-20, inclusive,

17

18

Defendants.

19

No.  Case No. 19-2-26191-9 SEA

SUMMONS (20 DAYS)

JUDGE: RUHL, DEPT. 08

20    TO THE DEFENDANT: A lawsuit has been started against you in the above entitled court by

21    LAURIE MUNNING, plaintiff. Plaintiff's claim is stated in the written complaint, a copy of

22    which is served upon you with this summons.

23         In order to defend against this lawsuit, you must respond to the complaint by stating

24    your defense in writing, and by serving a copy upon the person signing this summons within 20

25    days after the service of this summons, excluding the day of service, or a default judgment may

26    be entered against you without notice. A default judgment is one where plaintiff is entitled to

27    what she asks for because you have not responded. If you serve a notice of appearance on the

28    undersigned person, you are entitled to notice before a default judgment may be entered.

SUMMONS
Case No. 19-2-26191-9 SEA

- 1 -

1    You may demand that the plaintiff file this lawsuit with the court. If you do so, the

2    demand must be in writing and must be served upon the person signing this summons. Within

3    14 days after you serve the demand, the plaintiff must file her lawsuit with the court, or the

4    service on you of this summons and complaint will be void.

5        If you wish to seek the advice of an attorney in this matter, you should do so promptly

6    so that your written response, if any, may be served on time.

7        This summons is issued pursuant to rule 4 of the Superior Court Civil Rules of the State

8    of Washington.

9

10   DATED this 7th day of October, 2019.

11                        Presented by:

12                        HATTIS & LUKACS

13                        By: _____

14                             Daniel M. Hattis
                             Daniel M. Hattis, WSBA No. 50428
15                           dan@hattislaw.com
                             Che Corrington, WSBA No. 54241
16                           che@hattislaw.com
                             HATTIS & LUKACS
17                           400 108th Avenue, Suite 500
                             Bellevue, WA 98004
18                           Tel: 425.233.8650
                             Fax: 425.412.7171
19                           www.hattislaw.com

20                        and

21                        DeNITTIS OSEFCHEN & PRINCE, P.C.
                         Stephen P. DeNittis, Esq. *(Pro Hac Vice forthcoming)*
22                        sdenittis@denittislaw.com
                         Shane T. Prince, Esq. *(Pro Hac Vice forthcoming)*
23                        sprince@denittislaw.com
                         5 Greentree Centre
24                        525 Route 73 North, Suite 410
                         Marlton, NJ 08053
25                        Tel.: (856) 797-9951
                         Fax: (856) 797-9978
26                        www.denittislaw.com

27                        Attorneys for Plaintiff Laurie Munning and the Proposed Classes

28

HATTIS & LUKACS
400 108th Avenue NE, Suite 500
Bellevue, WA  98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1
2
3
4
5
6
7
8
9
10

**SUPERIOR COURT OF WASHINGTON
FOR KING COUNTY**

11
12

LAURIE MUNNING,
for Herself and On Behalf Of
All Others Similarly Situated,

13

                          Plaintiff,

14
15

     v.

16

NORDSTROM, INC.,
And DOES 1-20, inclusive,

17
18

                        Defendants.

No. _____

CLASS ACTION COMPLAINT FOR
DAMAGES, INJUNCTIVE, AND
DECLARATORY RELIEF UNDER
THE NEW JERSEY CONSUMER
FRAUD ACT, THE NEW JERSEY
TRUTH IN CONSUMER CONTRACT,
WARRANTY AND NOTICE ACT,
THE NEW JERSEY DECLARATORY
JUDGMENT ACT, AND NEW JERSEY
COMMON LAW

19
20

      Plaintiff LAURIE MUNNING, demanding trial by jury as to all issues so triable in a

21

separate document to be filed, alleges as follows, on personal knowledge and/or on the

22

investigation of her counsel, against Defendant Nordstrom, Inc., and Defendants Does 1

23

through 20, inclusive (collectively, "Defendant" or "Nordstrom"):

24

**I.**    **INTRODUCTION**

25

      1.     This is a class action brought on behalf of a proposed class of New Jersey

26

citizens who purchased purportedly-discounted consumer goods at Defendant's physical

27

Nordstrom Rack stores located in New Jersey, and who were the victims of Defendant's

28

CLASS ACTION COMPLAINT FOR
DAMAGES, INJUNCTIVE, AND
DECLARATORY RELIEF

    - 1 -

**HATTIS & LUKACS**
400 108ᵗʰ Avenue NE, Suite 500
Bellevue, WA  98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1   unlawful uniform sales and marketing practices described in greater detail herein.

2       2.       Specifically, with respect to most items offered for sale in its physical

3   Nordstrom Rack stores, Defendant has a uniform policy of attaching a price tag that bears at

4   least two prices—a higher "reference" price and a lower "sale" price.

5       3.       The higher "reference" price listed on Defendant's tags is typically identified

6   with a "strikethrough" (e.g., "$90.00") and purports to be either (a) a comparison price for the

7   item (i.e., the price at which other retailer(s) have regularly offered the item), or (b) a former

8   price (i.e., a price at which Defendant itself previously offered the item).

9       4.       The lower "sale" price listed on Defendant's tags is the item's actual selling

10   price.

11       5.       Defendant's price tags also expressly quantify, in terms of percentage, the

12   difference between the two prices, explicitly representing the **"% Savings"** it purportedly is

13   providing to the consumer.  For example, a product with a listed reference price of $90.00 and a

14   sale price of $69.97 will state **"22% Savings"** on the tag. *See, e.g.*, **Exhibit A**, Photograph of

15   Sperry Top-Sider boat shoes purchased by Plaintiff Munning at Defendant's Nordstrom Rack

16   store, with a price tag affixed by Defendant to one shoe stating:

17               **COMPARE AT $90.00**

18                   **$69.97**

19                **22% Savings**

20       6.       As a matter of law and fact, the typical consumer seeing such a price tag on an

21   item in a New Jersey store would understand it to be a representation by Defendant that either

22   Defendant or some other retailer was previously in the recent past—or is currently—offering to

23   sell that particular item at the stated higher reference price for a reasonable length of time in

24   New Jersey, and that Defendant is currently offering to sell that item at a discounted sale price,

25   resulting in the specified **"% Savings"** to the consumer.

26       7.       The typical consumer would also understand the reference price set forth on

27   Defendant's tags to be a representation by Defendant that the true value of the item in question

28   is equal to that higher reference price, and that Defendant is offering to sell the item to

CLASS ACTION COMPLAINT FOR
DAMAGES, INJUNCTIVE, AND                    - 2 -
DECLARATORY RELIEF

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA  98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1      consumers at a lower sale price that is less than what the item is actually worth.

2      8.      Thus, the average consumer would believe that he or she was "getting a deal" in

3 purchasing the item from Defendant's Nordstrom Rack store, based on the representations

4 placed on the item's tag and/or other advertising by Defendant.

5      9.      The reference prices listed on Defendant's price tags under this uniform policy,

6 however, do not represent actual prices at which the same item, or even comparable items, were

7 ever sold or offered for sale for a substantial period of time by anyone; whether in New Jersey

8 or elsewhere.

9      10.      Rather, the reference prices listed on Defendant's tags are wholly fictitious and

10 inflated prices, created by Defendant as a marketing tool according to a standardized formula,

11 or in some cases blindly adopted by Defendant from a suggested retail price provided by the

12 manufacturer and/or set by Defendant in coordination with the manufacturer, intended

13 specifically to induce the false and misleading impression in the minds of consumers that the

14 consumer goods bearing such tags are being offered for sale at a discounted price that is lower

15 than their usual selling price in the market place, and that the goods are of such quality that

16 they are actually worth that higher price.

17      11.      In actuality, each item in Defendant's Nordstrom Rack stores in New Jersey that

18 bears a higher reference price on its tag is *not* being discounted by Defendant from the

19 reference price, and the lower, purportedly-discounted sale price listed on the tag is—or is very

20 close to—the true, every-day, regular price at which the item is typically sold by Defendant

21 and/or other retailers in New Jersey.

22      12.      Thus, the **"% Savings"** represented by Defendant on each such price tag is also

23 false, because consumers are not actually saving the promised amount, and in most cases are

24 not saving anything at all.

25      13.      Defendant's policies described herein are unlawful. Both federal and New

26 Jersey law specifically prohibit a seller from making any representations regarding purported

27 comparison or former prices unless such prices are in fact real prices at which items were

28 actually sold or offered for sale for a substantial period of time by either the seller or a

CLASS ACTION COMPLAINT FOR
DAMAGES, INJUNCTIVE, AND          - 3 -
DECLARATORY RELIEF

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1    competitor in the recent past in the same area. These laws also prohibit "phantom" price

2    reductions and claims of discounts and **"Savings"** off reference prices that never actually

3    existed. *See* 16 C.F.R. § 233.1-2; N.J.A.C. § 13:45A-9.6.

4        14.    By advertising fake reference prices and phantom percentage-off discounts in

5    connection with the sale of consumer goods in New Jersey, Defendant has violated federal

6    regulations and New Jersey consumer protection laws, as alleged herein.

7        15.    Plaintiff's complaint seeks injunctive, declaratory, monetary and statutory relief

8    for herself and the proposed classes to end these false discount policies and obtain redress for

9    the classes, bringing:

10        a.    A claim under the New Jersey Consumer Fraud Act ("CFA"), in that

11   Defendant's uniform policies as described herein constitute an unconscionable commercial

12   practice and regulatory violation that violates N.J.S.A. § 56:8-2;

13        b.    A claim under the New Jersey Truth in Consumer Contract Warranty and

14   Notice Act ("TCCWNA"), in that Defendant has presented, shown, offered, and submitted

15   consumer notices, signs, and warranties to Plaintiff and the classes that violated their clearly

16   established rights arising under state law, as prohibited by N.J.S.A. § 56:12-15;

17        c.    A claim for an order for declaratory relief under the New Jersey

18   Declaratory Judgment Act, N.J.S.A. § 2A:16-51, *et seq.*, and injunctive relief to end

19   Defendant's ongoing unlawful uniform policies; and

20        d.    A claim under New Jersey common law for breach of implied contract

21   based on the violation of the implied covenant of good faith and fair dealing.

22   **II.    PARTIES**

23        16.   Laurie Munning is an individual and citizen of New Jersey.  During the class

24   period, Plaintiff Munning purchased consumer goods on numerous occasions from Defendant's

25   physical Nordstrom Rack stores including in Cherry Hill, New Jersey on July 12, 2017.

26   Plaintiff Munning was subjected to the practices alleged herein and suffered an ascertainable

27   loss as a result of Defendant's unlawful conduct.

28        17.   Defendant Nordstrom, Inc., ("Nordstrom") is a Washington corporation and

CLASS ACTION COMPLAINT FOR
DAMAGES, INJUNCTIVE, AND                    - 4 -
DECLARATORY RELIEF

1    citizen with its headquarters and primary offices located at 1617 Sixth Avenue, Seattle, WA

2    98101. Defendant owns and operates at least four physical Nordstrom Rack stores in New

3    Jersey, and did so at all times during the relevant class period.

4         18.    Defendant created the policies and procedures described herein in its corporate

5    headquarters located at 1617 Sixth Avenue, Seattle, WA 98101, and directed that these policies

6    and procedures be followed by all physical Nordstrom Rack stores in New Jersey.  Moreover,

7    Defendant created or adopted the fictitious reference prices and set and/or calculated the false

8    percentage-off at its corporate headquarters, and directed that these misrepresentations be

9    affixed to merchandise sold in all Nordstrom Rack stores in New Jersey.

10        19.    Defendants Doe 1 through Doe 20, inclusive, aided and/or abetted Nordstrom,

11   Inc., in such a manner that Doe 1 through Doe 20, inclusive, are each directly, contributorily,

12   vicariously, derivatively, and/or otherwise liable for the acts or omissions of Defendant

13   Nordstrom, Inc. Plaintiff is currently unaware of the true identities of Doe 1 through Doe 20,

14   inclusive; Plaintiff anticipates that, upon learning the true identities of any of Doe 1 through

15   Doe 20, inclusive, Plaintiff will either freely amend the operative complaint or request leave

16   from the Court to amend the operative complaint.

17   **III.    JURISDICTION AND VENUE**

18        20.    This Court has subject matter jurisdiction over this civil action pursuant to,

19   without limitation, Section 6 of Article IV of the Washington State Constitution (Superior

20   Court jurisdiction, generally).

21        21.    This Court has personal jurisdiction over Defendant because, *inter alia*,

22   Defendant Nordstrom, Inc.: (a) is headquartered in the State of Washington; (b) is authorized to

23   do business and regularly conducts business in this state; (c) maintained continuous and

24   systematic contacts in this state prior to and during the class period; and (d) purposefully

25   availed itself of the benefits of doing business in Washington.

26        22.    Venue is proper in King County Superior Court because, without limitation,

27   Defendant Nordstrom, Inc., is headquartered in King County. Moreover, Defendant regularly

28   transacted and continues to transact business in King County, in that Defendant operates its

CLASS ACTION COMPLAINT FOR
DAMAGES, INJUNCTIVE, AND                        - 5 -
DECLARATORY RELIEF

1    Nordstrom Rack stores and created and implemented the pricing policies complained of herein

2    from King County.

3         23.    Within the jurisdiction of King County Superior Court, this civil action is

4    assigned to the Seattle Case Assignment Area because, without limitation, Defendant

5    Nordstrom, Inc., is headquartered in the City of Seattle, King County.

6    **IV.    REFERENCE PRICING OVERVIEW**

7         24.    One of the most effective techniques in advertising is for a seller to offer

8    customers a reduction from either the seller's own former price for an item or the price at

9    which the item is typically sold by a competitor in the marketplace.

10        25.    This technique is widely used because sellers know the truth of the old adage

11   "everyone loves a bargain" and understand that a product's "regular" price—the price at which

12   a product is typically sold in the marketplace—matters to consumers.

13        26.    Over the past forty years, a substantial body of research on the effects of

14   reference prices (also referred to in the relevant literature as "advertised reference prices,"

15   "advertised former prices," and "external reference prices") shows that reference prices: (i)

16   cause consumers to believe that the higher reference reflects the value of the product; (ii)

17   increase consumers' willingness to make the purchase; (iii) decrease consumers' intentions to

18   search for a lower price; and (iv) enable sellers that utilize reference prices to charge higher

19   prices and make increased sales.

20        27.    Consumers form an "internal reference price," also known as an "expected

21   price," an "aspirational price" (a price the consumer would like to pay) or a "normative price"

22   (a price that is "fair"). Consumers store and retrieve the "internal reference price" from memory

23   to judge the merits of a specific price offer. Even where an advertised reference price is

24   exaggerated and not itself completely believed, perceptions of value increase in comparison to

25   a promotion with no advertised reference price. Thus, retailers' use of reference prices

26   influences consumers' "internal reference price" and subsequently, increases consumers'

27

28

1    willingness to purchase the product.[1]

2         28.    When a reference price is bona fide and truthful, it may help consumers in

3    making informed purchasing decisions. In contrast, consumers are harmed when retailers

4    advertise their products with inflated and false reference prices, because the false reference

5    prices deceive consumers, deprive consumers of a fair opportunity to accurately evaluate the

6    offer, and result in purchasing decisions based on false pretenses.

7         29.    False reference pricing causes consumers to pay more than they otherwise

8    would have paid for products. False reference pricing also fraudulently increases consumer

9    demand for products, enabling retailers to charge higher prices than they otherwise could have

10   charged.

11        30.    Beyond the adverse impact upon consumers' welfare, the practice of employing

12   false reference pricing also negatively affects the integrity of competition in retail markets. A

13   retailer's use of false reference prices constitutes an unfair method of competition, injuring

14   honest competitors that sell the same or similar products, or otherwise compete in the same

15   market, using valid and accurate reference prices. Businesses who play by the rules—and the

16   investors in those businesses—are penalized if the unlawful advertising practices of their

17   competitors go unchecked.

18        31.    Where the reference prices listed by the seller are genuine—where the buyer

19   _____

20   [1] See, e.g., Rajesh Chandrashekaran & Dhruv Grewal, *Assimilation of Advertised Reference Prices: The Moderating Role of Involvement*, 79 J. Retailing 53 (2003); Pilsik Choi & Keith S. Coulter, *It's Not All Relative: The Effects of Mental and Physical Positioning of Comparative*

21   *Prices on Absolute Versus Relative Discount Assessment*, 88 J. Retailing 512 (2012); Larry D. Compeau & Dhruv Grewal, *Comparative Price Advertising: An Integrative Review*, 17 J. Pub.

22   Pol'y & Mktg. 257 (1998); Larry D. Compeau, Dhruv Grewal & Rajesh Chandrashekaran, *Comparative Price Advertising: Believe It or Not*, 36 J. Consumer Aff. 284 (2002); David

23   Friedman, *Reconsidering Fictitious Pricing*, 100 Minn. L. Rev. 921 (2016); Dhruv Grewal & Larry D. Compeau, *Consumer Responses to Price and its Contextual Information Cues: A*

24   *Synthesis of Past Research, a Conceptual Framework, and Avenues for Further Research*, in 3 Rev. of Mktg. Res. 109 (Naresh K. Malhotra ed., 2007); Daniel J. Howard & Roger A. Kerin,

25   *Broadening the Scope of Reference Price Advertising Research: A Field Study of Consumer Shopping Involvement*, 70 J. Mktg. 185 (2006); Aradhna Krishna, Richard Briesch, Donald R.

26   Lehmann & Hong Yuan, *A Meta-Analysis of the Impact of Price Presentation on Perceived Savings*, 78 J. Retailing 101 (2002); Balaji C. Krishnan, Sujay Dutta & Subhash Jha,

27   *Effectiveness of Exaggerated Advertised Reference Prices: The Role of Decision Time Pressure*, 89 J. Retailing 105 (2013); and Tridib Mazumdar, S. P. Raj & Indrahit Sinha,

28   *Reference Price Research: Review and Propositions*, 69 J. Mktg. 84 (2005).

HATTIS & LUKACS
400 108th Avenue NE, Suite 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1    really is getting an item for a lower price than the one at which it was typically sold or offered

2    for sale in the recent past—then the "bargain" promised in a seller's advertising may be real.

3         32.     Unfortunately, the case at bar is not such a case.

4         33.     The case at bar involves a tactic designed to trick consumers into thinking they

5    are getting a "bargain," based on the use of fictitious, inflated reference prices that do not

6    reflect the actual price at which the items in question have been sold or offered for sale for a

7    substantial period of time by either Defendant or its competitors in the marketplace.

8    Defendant's primary purpose in perpetrating this false reference price scheme is to convince

9    consumers that Defendant's current price for the item is so far below the price ordinarily or

10   previously charged by Defendant or in the marketplace for such an item, such that the

11   consumer cannot pass up the "bargain."

12   **V.    LAWS PROHIBITING FALSE REFERENCE PRICING**

13        34.     The law recognizes the abuses that can flow from the use of such fictitious

14   reference prices.

15        35.     For example, 16 C.F.R. § 233.2, entitled **"Retail price/comparisons;**

16   **comparable value comparisons"** prohibits the advertisement of fictitious price comparisons

17   by sellers.

18        36.     16 C.F.R. § 233.2 makes clear that a direct price comparison (e.g., a "Compare

19   At" claim, which phrase Defendant uses on many of its price tags) is deceptive unless the

20   reference price used is a real price at which *that particular item* in question is or was actually

21   sold in a sufficient number of sales in the seller's area. *See* 16 C.F.R. § 233.2(a):

22          **(a) Another commonly used form of bargain advertising is to offer
        goods at prices lower than those being charged by others for the same
23        merchandise in the advertiser's trade area (the area in which he does
       business). This may be done either on a temporary or a permanent
24        basis, but in either case <u>the advertised higher price must be based upon
       fact, and not be fictitious or misleading. <u>Whenever an advertiser</u>
25        <u>represents that he is selling below the prices being charged in his area
       for a particular article, he should be reasonably certain that the higher
26        price he advertises does not appreciably exceed the price at which
       substantial sales of the article are being made in the area – that is, a
27        sufficient number of sales so that a consumer would consider a
       reduction from the price to represent a genuine bargain or saving.</u></b>**

28

CLASS ACTION COMPLAINT FOR
DAMAGES, INJUNCTIVE, AND       - 8 -
DECLARATORY RELIEF

HATTIS & LUKACS
400 108th Avenue NE, Suite 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1   (emphasis added).

2        37.      Where the seller presents the purported price comparison using the term

3   "**Comparable Value**"—another phrase used by Defendant on many of its tags—16 C.F.R.

4   § 233.2(c) makes clear that the listed "**Comparable Value**" price must also be a real price at

5   which comparable merchandise of like quality is actually being sold by representative retail

6   outlets in the area. *See* 16 C.F.R. § 233.2(c):

7        **(c) A closely related form of bargain advertising is to offer a reduction
         from the prices being charged either by the advertiser or by others in
8        the advertiser's trade area for other merchandise of like grade and
         quality – in other words, comparable or competing merchandise – to
9        that being advertised… The advertiser should, however, be reasonably
         certain, just as in the case of comparisons involving the same
10       merchandise, that the price advertised as being the price of comparable
         merchandise does not exceed the price at which such merchandise is
11       being offered by representative retail outlets in the area. For example,
         retailer Doe advertises Brand X pen as having "Comparable Value
12       $15.00". Unless a reasonable number of the principal outlets in the area
         are offering Brand Y, an essentially similar pen, for that price, this
13       advertisement would be deceptive.**

14  (emphasis added).

15       38.      Similarly, 16 C.F.R. § 233.1 prohibits the advertising of false, "phantom" price

16  reductions and discounts off inflated, fictitious former prices that never actually existed.  *See*

17  16 C.F.R. § 233.1., stating:

18       § 233.1 Former price comparisons.

19       **(a) One of the most commonly used forms of bargain advertising is to
         offer a reduction from the advertiser's own former price for an article.
20       If the former price is the actual, bona fide price at which the article was
         offered to the public on a regular basis for a reasonably substantial
21       period of time, it provides a legitimate basis for the advertising of a
         price comparison. Where the former price is genuine, the bargain being
22       advertised is a true one. If, on the other hand, the former price being
         advertised is not bona fide but fictitious – for example, where an
23       artificial, inflated price was established for the purpose of enabling the
         subsequent offer of a large reduction – the "bargain" being advertised
24       is a false one; the purchaser is not receiving the unusual value he
         expects. In such a case, the "reduced" price is, in reality, probably just
25       the seller's regular price.**

26       **(b) A former price is not necessarily fictitious merely because no sales
         at the advertised price were made. The advertiser should be especially
27       careful, however, in such a case, that the price is one at which the
         product was openly and actively offered for sale, for a reasonably
28       substantial period of time, in the recent, regular course of his business,**

HATTIS & LUKACS
400 108th Avenue NE, Suite 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1

**honestly and in good faith – and, of course, not for the purpose of**

**establishing a fictitious higher price on which a deceptive comparison**

2

**might be based. And the advertiser should scrupulously avoid any**

**implication that a former price is a selling, not an asking price (for**

3

**example, by use of such language as, "Formerly sold at $\_\_\_"), unless**

**substantial sales at that price were actually made.**

4

                   \*        \*        \*

5

**(d) Other illustrations of fictitious price comparisons could be given.**

**An advertiser might use a price at which he never offered the article at**

6

**all; he might feature a price which was not used in the regular course**

**of business, or which was not used in the recent past but at some remote**

7

**period in the past, without making disclosure of that fact; he might use**

**a price that was not openly offered to the public, or that was not**

8

**maintained for a reasonable length of time, but was immediately**

**reduced.**

9

(emphasis added).

10

    39.    New Jersey law also recognizes that the tactic of using a false comparison or

11

false former price to lure consumers into believing they are getting a discount is a misleading

12

and deceptive tactic.

13

    40.    The regulations promulgated under the New Jersey Consumer Fraud Act include

14

an entire set of regulations designed to ensure that when a seller uses purported discounts and

15

statements regarding purported comparison prices or former prices to try to induce a purchase,

16

the statements are clear, true, and accurate, and not in any way misleading or deceptive.

17

    41.    Taken together, these regulations prohibit a New Jersey seller from using a

18

fictitious, baseless, made-up, or "estimated" comparison or former price in its advertising and

19

require that a seller's stated comparison or former price be a real price at which the goods in

20

question were actually offered for sale in New Jersey in the recent past.

21

    42.    For example, N.J.A.C. § 13:45A-9.6, entitled "Pricing; prohibition on fictitious

22

pricing and methods of substantiation" states:

23

**(a)  An advertiser shall not use a fictitious former price. Use of a**

**fictitious former price will be deemed to be a violation of the Consumer**

24

**Fraud Act.**

25

**(b)  A former price or price range or the amount of reduction shall be**

**deemed fictitious if it cannot be substantiated, based upon proof:**

26

**1.  Of a substantial number of sales of the advertised**

27

**merchandise, or comparable merchandise of like grade or**

**quality made within the advertiser's trade area in the regular**

28

**course of business at any time within the most recent 60 days**

CLASS ACTION COMPLAINT FOR
DAMAGES, INJUNCTIVE, AND
DECLARATORY RELIEF

- 10 -

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA  98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1       **during which the advertised merchandise was available for sale**
    **prior to, or <u>which were in fact made in the first 60 days during**
2       **which the advertised merchandise was available for sale**
    **following the effective date of the advertisement;</u>**
3
    **2.   That   the   advertised   merchandise,   or   comparable**
4       **merchandise of like grade or quality, <u>was actively and openly**
    **offered for sale at that price within the advertiser's trade area**
5       **in the regular course of business during at least 28 days of the**
    **most recent 90 days before or after the effective date of the**
6       **advertisement;</u> or**

7       **3.   That the price does not exceed the supplier's cost plus the**
    **usual and customary mark-up used by the advertising merchant**
8       **in the actual sale of the advertised merchandise or comparable**
    **merchandise of like grade or quality in the recent regular course**
9       **of business.**

10  (emphasis added).

11      43.    Similarly, for items with a price of less than $100, N.J.A.C. §13:45A-9.3(a)(3)

12  provides that a seller must comply with N.J.A.C. §13:45A-9.4(a)(6), which requires a seller to

13  specifically:

14      **6. <u>Set forth with specificity when in the remote past a former**
    **price of an item of merchandise was effective if it was not**
15      **actively or openly offered for sale within the advertiser's trade**
    **area in the regular course of business during at least 28 of the**
16      **90 days before the effective date of the advertisement. In this</u>**
    **regard, when advertising a seasonal sale, such as Christmas**
17      **dishes, pool supplies, outdoor furniture, etc., actual dates,**
    **specific holidays or terms such as 'last season,' may be used to**
18      **describe when the former price was used in the remote past.**

19  (emphasis added).

20      44.    Thus, these regulations do not permit a seller to invent, estimate, or blindly

21  adopt a purported comparison or former price. Rather, under these regulations, a purported

22  comparison or former price advertised by the seller must be a real price at which the seller or

23  someone in the seller's trade area actually sold or offered the item for sale in the recent past.

24  **VI.    <u>THE UNIFORM POLICIES GIVING RISE TO THE CLASS CLAIMS</u>**

25      45.    Defendant's false discount pricing practices include advertising false reference

26  prices, false discounts, and false percentage-off savings.

27      46.    Defendant's policy of providing customers with a tag bearing two prices—a

28  higher reference price that purports to be a comparison or former price and a lower,

CLASS ACTION COMPLAINT FOR
DAMAGES, INJUNCTIVE, AND        - 11 -
DECLARATORY RELIEF

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1   purportedly-discounted selling price—is a deceptive and misleading practice in the sale of

2   goods because Defendant's reference prices are false and inflated.

3       47.     As a matter of uniform policy, nearly every item of merchandise in every

4   Nordstrom Rack store in New Jersey bears a price tag that lists at least two prices:  a higher

5   reference price that purports to be either a comparison or former price for the item, and a

6   purportedly discounted "sale" price at which Defendant is currently offering the item for sale.

7       48.     Defendant typically identifies a purported comparison price with the terms

8   **"COMPARE AT"** or **"COMPARABLE VALUE."** *See, e.g.*, **Exhibit A**, Photograph of a

9   pair of Sperry Top-Sider boat shoes purchased by Plaintiff Munning at Defendant's Nordstrom

10  Rack store, with an affixed tag stating **"COMPARE AT $90.00"**; **Exhibit B**, Photograph of a

11  price tag affixed to a Tommy Hilfiger tie similar to one of those purchased by Plaintiff

12  Munning at Defendant's Nordstrom Rack store, stating **"COMPARABLE VALUE 69.50."**

13      49.     Ordinary consumers understand, and Nordstrom intends, that the phrase

14  **"COMPARE AT"** mean the price at which that particular item is or was recently usually sold

15  by Nordstrom's or by a retail competitor to Nordstrom's.  Notably, in Nordstrom Rack retail

16  stores in New Jersey, no definition or explanation regarding the meaning of **"COMPARE AT"**

17  is disclosed anywhere in the store—not on the price tags, not on the product shelves, and not on

18  any signage or postings. However, it is notable that on the Nordstrom Rack website, Nordstrom

19  Rack (although *only in the fine print*) explicitly defined **"COMPARE AT"** to mean what "the

20  item" (i.e., that particular item) was originally offered for at other retailers. Below is a

21  screenshot taken on the Nordstrom Rack website on January 11, 2018, which displays this

22  disclaimer being shown after the user clicks on the little "i" next to the advertised reference

23  price:

24

25

26

27

28

HATTIS & LUKACS
400 108th Avenue NE, Suite 500
Bellevue, WA  98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com



50.     Starting around mid 2018, Nordstrom also begin using the phrase

"**COMPARABLE VALUE**" to describe some of its reference prices in its Nordstrom Rack

retail stores. Ordinary consumers understand the phrase "**COMPARABLE VALUE**" to mean

the price at which that particular item, or possibly a comparable item of similar quality, is or

was usually offered in the recent past by Nordstrom's or by a retail competitor to Nordstrom's.

Notably, in Nordstrom Rack retail stores in New Jersey, no definition or explanation regarding

the meaning of "**COMPARABLE VALUE**" is disclosed anywhere in the store—not on the

price tags, not on the product shelves, and not on any signage or postings.

51.     Nordstrom also advertises some reference prices without using any descriptive

language at all except for a strike-through. *See, e.g.*, **Exhibit C**, Photograph of a price tag

attached to a Weatherproof Vintage sweater offered for sale at Defendant's Nordstrom Rack

store, stating simply "**75.00**." Ordinary consumers understand such a strike-through reference

CLASS ACTION COMPLAINT FOR
DAMAGES, INJUNCTIVE, AND
DECLARATORY RELIEF                          - 13 -

HATTIS & LUKACS
400 108th Avenue NE, Suite 500
Bellevue, WA  98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1  price by itself to represent Defendant's *own* former price at which the product was regularly

2  offered in the recent past.

3    52.    As evidenced by the above examples, Defendant adds a strikethrough

4  designation to both comparison and former reference prices on the majority of its tags,

5  ostensibly to emphasize that those prices are common elsewhere, or were previously the regular

6  price in Defendant's stores, but have been reduced by Defendant. *See, e.g.*, **Exhibit A**

7  ("$90.00"), **Exhibit B** ("69.50"), **Exhibit C** ("75.00").

8    53.    Sometimes, "MSRP" is also present on the product's tags (which in some cases

9  may have been printed on the tag by the manufacturer). This MSRP printed price is often

10  present together with Defendant's own comparison price or former price representations.

11  Significantly, Defendant's reference prices—whether comparison or former—often track this

12  MSRP when it is provided. *See* **Exhibit C** (former price of "75.00" identical to

13  **"MANUFACTURER'S SUGGESTED RETAIL PRICE"** of "$75.00"); **Exhibit D**

14  (**"COMPARABLE VALUE"** of "30.00" identical to manufacturer's suggested price of

15  "$30.00"); **Exhibit E**, Photographs of various price tags attached to items offered for sale at

16  Defendant's Nordstrom Rack stores, where the purported base prices are identical to the

17  suggested retail prices proposed by the manufacturer. In such cases, Defendant's comparison or

18  former reference prices are often blindly adopted by Defendant from an MSRP provided by the

19  manufacturer, or which is set in coordination with the manufacturer, and are inflated far above

20  the actual market price for the product.

21    54.    Defendant's price tags also expressly quantify, in terms of percentage, the

22  difference between the listed reference price and the listed sale price, explicitly stating the

23  **"% Savings"** purportedly afforded to the consumer.  For example, a product with a listed

24  reference price of $90.00 and a listed sale price of $69.97 will state **"22% Savings"** on the tag.

25  *See, e.g.*, **Exhibit A**, Photograph of Sperry Top-Sider boat shoes purchased by Plaintiff

26  Munning at Defendant's Nordstrom Rack store, with a price tag stating:

27

28

CLASS ACTION COMPLAINT FOR
DAMAGES, INJUNCTIVE, AND
DECLARATORY RELIEF                        - 14 -                        **HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1

2      **COMPARE AT ~~$90.00~~**

3            **$69.97**

4            **22% Savings**

5      55.    Confronted with such a price tag, a reasonable New Jersey consumer would

6      believe that the higher reference price represents a typical price at which the same item was

7      previously sold by Defendant or in the marketplace, and thus is equivalent to the fair market

8      value of the item in question.

9      56.    The reasonable consumer would also understand that the claimed **"% Savings"**

10     on Defendant's price tags represents the amount of monetary savings that would be enjoyed by

11     the consumer who purchases the item from Defendant rather than from someone else.

12     57.    As a matter of uniform policy, however, the reference prices listed on

13     Defendant's price tags are not true current or former prices, in that the items in question were

14     never actually sold or offered for sale by Defendant or anyone else in the marketplace at the

15     purported reference prices; let alone for a substantial number of sales in New Jersey in the

16     recent past.

17     58.    Rather, every reference price listed on Defendant's price tags in Defendant's

18     New Jersey stores was created by Defendant, using subjective criteria and a standardized

19     formula designed by Defendant, or alternatively was blindly adopted by Defendant from the

20     MSRP without any attempt at confirmation.

21     59.    It is specifically alleged that, during the class period, Defendant took no action

22     whatsoever to confirm that items offered for sale in its New Jersey Nordstrom Rack stores, or

23     comparable items, had ever been sold by anyone at the reference prices listed on their tags, or

24     had been offered for sale at those prices for any specific length of time.

25     60.    Based on Plaintiff's counsel's pre-filing investigation, at no time during the

26     class period did Defendant itself offer items for sale at their listed reference prices in its New

27     Jersey Nordstrom Rack stores. This is consistent with counsel's investigation of the Nordstrom

28     Rack website (which often offers the identical items as in Nordstrom Rack's retail stores, with

CLASS ACTION COMPLAINT FOR
DAMAGES, INJUNCTIVE, AND                    - 15 -
DECLARATORY RELIEF

1    the same reference price and substantially the same selling price). Counsel has been monitoring

2    Nordstrom Rack's website since August 21, 2014, via a proprietary data harvesting system.

3    Counsel has been tracking approximately 80,000 products each and every day, a large number

4    of which are also offered in Nordstrom retail stores. In total, counsel has collected and archived

5    daily pricing information and screenshots for over 100 million daily offerings for over 1 million

6    products offered on Nordstrom Rack's website over this three-and-a-half-year period. The data

7    confirms that Nordstrom virtually *never* offers any of its products at the advertised reference

8    price online, consistent with its practices in its retail stores such as those in New Jersey.

9        61.    Virtually no items offered for sale in Defendant's Nordstrom Rack retail stores

10   with affixed tags listing both a higher reference price and a lower, purportedly-discounted sale

11   price are actually being discounted by Defendant; instead, the lower sale price is (or is very

12   close to) the true, every-day, regular price at which the items are typically offered and sold.

13       62.    Consequently, the **"% Savings"** represented by Defendant on its price tags is

14   also false because consumers are not saving the claimed percentage, if anything at all.  In

15   reality, the claimed **"% Savings"** represents only the difference between the higher inflated

16   and unsubstantiated reference price and the lower sale price; it does not correlate to any actual

17   savings afforded to the customer.

18       63.    The result of Defendant's policy was to induce Plaintiff and other consumers to

19   purchase items from Defendant's Nordstrom Rack stores, based on their belief that they were

20   purchasing valuable merchandise worth a much higher price (*i.e.*, Defendant's claimed

21   reference price) at substantial savings (*i.e.*, Defendant's claimed **"% Savings"**), as compared to

22   prices ordinarily charged for those same products by other retailers.  In actuality, they would

23   have paid the same or less for identical or similar products sold by other merchants in New

24   Jersey.

25   **VII.    PLAINTIFF'S FACTUAL ALLEGATIONS**

26       64.    Plaintiff Munning's personal experience illustrates Defendant's unlawful,

27   deceptive and misleading policies as described herein.

28       65.    On or about July 12, 2017, Plaintiff Munning visited the Nordstrom Rack retail

CLASS ACTION COMPLAINT FOR
DAMAGES, INJUNCTIVE, AND                     - 16 -
DECLARATORY RELIEF

HATTIS & LUKACS
400 108th Avenue NE, Suite 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1   store located at the Nordstrom Rack Towne Place, Garden State Park, 951 Haddonfield Road,

2   Suite A, Cherry Hill, NJ 08002. While at the store, Ms. Munning saw price tags that advertised

3   significant sales and percentage-off discounts for products.

4       66.     For example, one item purchased by Ms. Munning was a pair of Sperry Top-

5   Sider boat shoes for $69.97 ("Shoes"). Affixed to the Shoes was a price tag stating:

6

7       **COMPARE AT $90.00**
        **$69.97**

8       **22% Savings**

9

10  *See* **Exhibit A**, Photograph of Sperry Top-Sider boat shoe purchased by Plaintiff Munning at

11  Defendant's Nordstrom Rack store, with affixed price tag.

12      67.     Ms. Munning viewed this price tag, and understood that she would receive 22%

13  off the regular price for this pair of Shoes.

14      68.     Relying on Defendant's representations, Ms. Munning reasonably believed that

15  the Shoes were normally offered and sold by Defendant or a competing retailer for the $90.00

16  "**COMPARE AT**" reference price. Ms. Munning thereby reasonably believed that the Shoes

17  were worth and had a value of $90.00. Ms. Munning reasonably believed that the advertised

18  "**22% Savings**" represented a special bargain, where Defendant was currently offering the

19  Shoes for $30.03 off of the regular and normal selling price of $90.00. Relying on Defendant's

20  representations, Ms. Munning purchased the Shoes for $69.97 (at a purported discount of 22%

21  off the regular price of $90.00).

22      69.     However, Defendant's $90.00 "**COMPARE AT**" reference price and advertised

23  discount of "**22% Savings**" was false and deceptive. In reality, and unbeknownst to Ms.

24  Munning, Defendant had never offered the Shoes for $90.00. Likewise, $90.00 was not the

25  regular price for those Shoes at other retail stores which competed with Nordstrom Rack.

26      70.     Defendant had fooled Ms. Munning. The Shoes were not in fact worth the

27  $90.00 price that Defendant had led her to believe. Contrary to Defendant's representations,

28  Ms. Munning did not receive any deal at all. The $69.97 price she paid was in fact

CLASS ACTION COMPLAINT FOR
DAMAGES, INJUNCTIVE, AND                    - 17 -
DECLARATORY RELIEF

1    approximately equal to the usual and normal selling price for the Shoes.

2         71.    Also while at that same Nordstrom Rack on July 12, 2017, in Cherry Hill, New

3    Jersey, Ms. Munning saw and purchased several Tommy Hilfiger ties ("Ties"). Affixed to each

4    tie was a price tag stating:

5
     **COMPARABLE VALUE 69.50**
6         **71% Savings 19.97**

7

8    *See* **Exhibit B**, Photograph of several Tommy Hilfiger ties purchased by Plaintiff Munning at

9    Defendant's Nordstrom Rack store, and a price tag affixed to a similar Tommy Hilfiger tie

10   stating **"COMPARABLE VALUE 69.50."**

11        72.    Ms. Munning viewed this price tag, and understood that she would receive 71%

12   off the regular price for these Ties.

13        73.    Relying on Defendant's representations, Ms. Munning reasonably believed that

14   the Ties were each normally offered and sold by Defendant or a competing retailer for the

15   $69.50 **"COMPARABLE VALUE"** reference price. Ms. Munning thereby reasonably

16   believed that each Tie was worth and had a value of $69.50. Ms. Munning reasonably believed

17   that the advertised sayings of **"71% Savings"** represented a special bargain, where Defendant

18   was currently offering each Tie for $49.53 off of the regular and normal selling price of $69.50.

19   Relying on Defendant's representations, Ms. Munning purchased the Ties for $19.97 each (at a

20   purported discount of 71% off the regular price of $69.50).

21        74.    However, Defendant's $69.50 **"COMPARABLE VALUE"** reference price and

22   advertised discount of 71% off was false and deceptive. In reality, and unbeknownst to Ms.

23   Munning, Defendant had never offered the Ties for $69.50. Likewise, $69.50 was not the

24   regular price for those Ties at other retail stores which competed with Defendant. $69.50 was

25   also not the regular price for similar ties of comparable quality at Defendant's stores or at

26   competing retailers' stores.

27        75.    Defendant had fooled Ms. Munning. The Ties were not in fact worth the $69.50

28   price that Defendant had led her to believe. Contrary to Defendant's representations, Ms.

CLASS ACTION COMPLAINT FOR
DAMAGES, INJUNCTIVE, AND                    - 18 -
DECLARATORY RELIEF

1   Munning did not receive any deal at all. The $19.97 price she paid was in fact approximately

2   equal to the usual and normal selling price for the Ties.

3       76.     Ms. Munning reasonably relied on Defendant's material misrepresentations. If

4   Ms. Munning had known the truth, she would have acted differently and/or would not have

5   purchased the products at the Nordstrom Rack store.

6       77.     These misrepresentations by Defendant are material misrepresentations, in that

7   they are the type of representations on which an ordinary prudent person would rely upon in

8   conducting his or her affairs.

9       78.     As a direct and proximate result of Defendant's acts and omissions, Plaintiff was

10  harmed, suffered an injury-in-fact, and lost money or property.

11      79.     Defendant's false advertising harmed Ms. Munning by causing her to pay more

12  than she otherwise would have paid and to buy more than she otherwise would have bought.

13  Ms. Munning did not enjoy the stated discounts from the purported regular prices for the

14  products that Defendant represented to her, and the products were not, in fact, worth as much as

15  Defendant represented them to be worth (i.e., the products were not worth the inflated and

16  fictitious reference price).

17      80.     Plaintiff has a legal right to rely now, and in the future, on the truthfulness and

18  accuracy of Defendant's representations regarding its advertised reference prices and discounts.

19      81.     Ms. Munning was a regular shopper at Nordstrom Rack, and would likely

20  regularly shop there again if she could have confidence regarding the truth of Defendant's

21  prices and the value of its products.

22      82.     Ms. Munning will be harmed if, in the future, she is left to guess as to whether

23  Defendant is providing a legitimate sale or not, and whether products are actually worth the

24  amount that Defendant is representing.

25      83.     If Ms. Munning were to purchase again at a Nordstrom Rack store without

26  Defendant having changed its unlawful and deceptive conduct alleged herein, Ms. Munning

27  would be harmed on an ongoing basis and/or would be harmed once or more in the future.

28      84.     The deceptive practices and policies alleged herein, and experienced directly by

CLASS ACTION COMPLAINT FOR
DAMAGES, INJUNCTIVE, AND                    - 19 -
DECLARATORY RELIEF

HATTIS & LUKACS
400 108th Avenue NE, Suite 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1   Plaintiff Munning, are not limited to any single product or group of products. Rather,

2   Defendant's deceptive advertising and sales practices, which advertise and state false

3   **"COMPARE AT**, **"COMPARABLE VALUE,"** former, and/or strikethrough prices, and false

4   percentage-off discounts, were, and continue to be, systematic and pervasive across nearly all

5   of Defendant's purportedly discounted products in its New Jersey Nordstrom Rack retail stores.

6   **VIII.   CLASS ACTION ALLEGATIONS**

7          85.     Plaintiff Munning brings this class-action lawsuit under New Jersey state law on

8   behalf of herself and the members of the following proposed class:

9               **All New Jersey citizens who purchased any item bearing a price**
               **tag that contained both a higher reference price and a lower sale**
10              **price at a Nordstrom Rack store located in New Jersey between**
               **October 7, 2013 and the present.**
11

12          86.     Plaintiff Munning also brings this class-action lawsuit under New Jersey state

13   law on behalf of herself and the members of the following proposed subclass:

14              **All New Jersey citizens who purchased any item bearing a price**
               **tag that stated "Compare At" at a Nordstrom Rack store located**
15              **in New Jersey between October 7, 2013 and the present.**

16          87.     Plaintiff Munning also brings this class-action lawsuit under New Jersey state

17   law on behalf of herself and the members of the following proposed subclass:

18              **All New Jersey citizens who purchased any item bearing a price**
               **tag that stated "Comparable Value" at a Nordstrom Rack store**
19              **located in New Jersey between October 7, 2013 and the present.**

20          88.     Specifically excluded from the Class are Defendant, any entity in which

21   Defendant has a controlling interest or which has a controlling interest in Defendant,

22   Defendant's agents and employees and attorneys, the bench officers to whom this civil action is

23   assigned, and the members of each bench officer's staff and immediate family.

24          89.     *Numerosity.* Plaintiff does not know the exact number and identities of the

25   persons who fit within each proposed class, but is informed and believes that the proposed

26   classes and subclasses are each composed of at least 10,000 persons. As such, the classes for

27   whose benefit this action is brought are each so numerous that joinder of all members is

28

CLASS ACTION COMPLAINT FOR
DAMAGES, INJUNCTIVE, AND                       - 20 -
DECLARATORY RELIEF

1    impracticable.

2         90.    ***Commonality and Predominance.*** Common questions of law and fact exist as to

3    each class member. All claims in this action arise exclusively from uniform policies and

4    procedures of Defendant as outlined herein. No violations alleged in this Complaint are a result

5    of any individualized oral communications or individualized interaction of any kind between

6    class members and Defendant or anyone else. These questions predominate over questions that

7    might affect individual class members. These common questions include, but are not limited to,

8    the following:

9              a.    Whether the uniform advertising, marketing, and sales practices alleged

10   herein exist;

11             b.    Whether Defendant employs a uniform policy of listing fictitious

12   reference prices on the tags of its merchandise that do not represent actual prices at which the

13   merchandise has been or is typically sold or offered for sale;

14             c.    Whether Defendant uses a standardized formula or policy to create or

15   adopt such fictitious reference prices;

16             d.    Whether Defendant's policy of listing fictitious reference prices and false

17   **"% Savings"** on the tags of its merchandise is a deceptive, misleading and/or unlawful practice

18   relating to the sale of goods in violation of N.J.S.A. § 56:8-2 of the New Jersey Consumer Fraud

19   Act;

20             e.    Whether the tags on Defendant's merchandise constitute consumer

21   notices, signs or warranties within the meaning of N.J.S.A. § 56:12-15 of the New Jersey Truth

22   in Consumer Contract, Warranty and Notice Act;

23             f.    whether Defendant's policy of listing fictitious reference prices and false

24   **"% Savings"** on the tags of its merchandise violates N.J.S.A. § 56:12-15 of the New Jersey Truth

25   in Consumer Contract, Warranty and Notice Act;

26             g.    Whether each class member is entitled to a $100 per person statutory

27   penalty under N.J.S.A. § 56:12-17 of the New Jersey Truth in Consumer Contract, Warranty and

28   Notice Act; and

CLASS ACTION COMPLAINT FOR
DAMAGES, INJUNCTIVE, AND
DECLARATORY RELIEF

- 21 -

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA  98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1              h.      Whether Plaintiff and the class are entitled to an order for injunctive relief,

2   barring the continuing illegal policies described herein.

3         91.     The prosecution of separate actions by individual class members would create a

4   risk of inconsistent or varying adjudications with respect to individual class members which

5   would establish incompatible standards of conduct for the party opposing the classes.

6         92.     The party opposing each class has acted or refused to act on grounds generally

7   applicable to each class, thereby making appropriate final injunctive relief with respect to each

8   class as a whole.

9         93.     *Typicality.* Plaintiff is a member of the classes she seeks to represent. The

10   claims of Plaintiff are typical of all class members. All claims of Plaintiff and the classes arise

11   from the same course of conduct, policy and procedures as outlined herein. All claims of

12   Plaintiff and the classes are based on the same legal theories. Plaintiff seeks the same relief for

13   herself as for every other class and sub-class member. Defendant has acted and/or refused to act

14   on grounds generally applicable to the classes, thereby making appropriate injunctive and

15   declaratory relief for each class as a whole.

16         94.     *Adequacy.* Plaintiff will fairly and adequately protect class members' interests.

17   Plaintiff has no interest antagonistic to or in conflict with the classes. Plaintiff has retained

18   qualified and competent legal counsel to represent herself and the classes.

19         95.     Further, a class action is superior to all other available methods for fairly and

20   efficiently adjudicating this controversy. Each class member's interests are small compared to

21   the burden and expense required to litigate each of their claims individually, so it would be

22   impractical and would not make economic sense for class members to seek individual redress

23   for Defendant's conduct. Individual litigation would add administrative burden on the courts,

24   increasing the delay and expense to all parties and to the court system. Individual litigation

25   would also create the potential for inconsistent or contradictory judgments regarding the same

26   uniform conduct. A single adjudication would create economies of scale and comprehensive

27   supervision by a single judge. Moreover, Plaintiff does not anticipate any difficulties in

28   managing a class action trial.

CLASS ACTION COMPLAINT FOR
DAMAGES, INJUNCTIVE, AND       - 22 -
DECLARATORY RELIEF

HATTIS & LUKACS
400 108th Avenue NE, Suite 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1    96.    By its conduct and omissions alleged herein, Defendant has acted and refused to

2  act on grounds that apply generally to the classes, such that final injunctive relief and/or

3  declaratory relief is appropriate respecting the classes as a whole.

4    97.    The nature of Defendant's misconduct is non-obvious and/or obscured from

5  public view, and neither Plaintiff nor the members of the classes could have, through the use of

6  reasonable diligence, learned of the accrual of their claims against Defendant at an earlier time.

7  This Court should, at the appropriate time, apply the discovery rule to extend any applicable

8  limitations period (and the corresponding class period) to the date on which Defendant first

9  began perpetrating the false reference price and false discount advertising scheme alleged

10  herein.

11                                         **CAUSES OF ACTION**

12

13                                                **COUNT I**
                              **Violation of the New Jersey Consumer Fraud Act**
14                                      **(N.J.S.A. § 56:8-1, *et seq.*)**

15    98.    Plaintiff realleges and incorporates by reference all paragraphs alleged

16  hereinbefore.

17    99.    The New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1, *et seq.* ("CFA"), was

18  enacted to protect consumers against sharp and unconscionable commercial practices by

19  persons engaged in the sale of goods or services. *See Marascio v. Campanella*, 689 A.2d 852,

20  857 (N.J. Ct. App. 1997).

21    100.    The CFA is a remedial statute which the New Jersey Supreme Court has

22  repeatedly held must be construed liberally in favor of the consumer to accomplish its deterrent

23  and protective purposes. *See Furst v. Einstein Moomjy, Inc.*, 860 A.2d 435, 441 (N.J. 2004)

24  **("The [CFA] is remedial legislation that we construe liberally to accomplish its broad**

25  **purpose of safeguarding the public.").**

26    101.    Indeed, "[t]he available legislative history demonstrates that the [CFA] was

27  intended to be one of the strongest consumer protection laws in the nation." *New Mea Const.*

28  *Corp. v. Harper*, 497 A.2d 534, 543 (N.J. Ct. App. 1985).

CLASS ACTION COMPLAINT FOR
DAMAGES, INJUNCTIVE, AND                          - 23 -
DECLARATORY RELIEF

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1    102.    For this reason, the **"history of the [CFA] is one of constant expansion of**

2    **consumer protection."** *Kavky v. Herbalife Int'l of Am.*, 820 A.2d 677, 681-82 (N.J. Ct. App.

3    2003).

4    103.    The CFA was intended to protect consumers **"by eliminating sharp practices**

5    **and dealings in the marketing of merchandise and real estate."** *Lemelledo v. Beneficial*

6    *Mgmt. Corp.*, 696 A.2d 546, 550 (N.J. 1997).

7    104.    Specifically, N.J.S.A. 56:8-2 prohibits **"unlawful practices"** which are defined

8    as:

9    > **The act, use or employment of any unconscionable commercial**
> **practice, deception, fraud, false pretense, misrepresentation, or the**
10   > **knowing, concealment, suppression, or omission of any material fact**
> **with intent that others rely upon such concealment, suppression or**
11   > **omission whether or not any person has in fact been misled, deceived**
> **or damaged thereby.**
12

13   105.    The catch-all term **"unconscionable commercial practice"** was added to the

14   CFA by amendment in 1971 to ensure that the CFA covered, *inter alia*, **"incomplete**

15   **disclosures."** *Skeer v. EMK Motors, Inc.*, 455 A.2d 508, 512 (N.J. Ct. App. 1982).

16   106.    In describing what constitutes an **"unconscionable commercial practice,"** the

17   New Jersey Supreme Court has noted that it is an amorphous concept designed to establish a

18   broad business ethic. *See Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462 (N.J. 1994).

19   107.    In order to state a cause of action under the CFA, a plaintiff does not need to

20   show reliance by the consumer. *See Varacallo v. Massachusetts Mut. Life Ins. Co.*, 752 A.2d

21   807 (N.J. App. Div. 2000); *Gennari v. Weichert Co. Realtors*, 691 A.2d 350 (N.J. 1997)

22   (holding that reliance is not required in suits under the NJCFA because liability results from

23   **"misrepresentations whether 'any person has in fact been misled, deceived or damaged**

24   **thereby'").**

25   108.    As stated by the New Jersey Supreme Court in *Lee v. Carter-Reed Co.*, L.L.C., 4

26   A.3d 561, 580 (N.J. 2010): "It bears repeating that the [NJCFA] does not require proof of

27   reliance, but only a causal connection between the unlawful practice and ascertainable loss."

28

CLASS ACTION COMPLAINT FOR
DAMAGES, INJUNCTIVE, AND                    - 24 -
DECLARATORY RELIEF

1    109.    It is also not required that an affirmative statement be literally false in order to

2    be considered deceptive and misleading under the CFA. Even a statement which is literally true

3    can be misleading and deceptive in violation of the CFA. *See Smajlaj v. Campbell Soup Co.,*

4    782 F. Supp. 2d 84, 98 (D.N.J. 2011) (upholding a CFA claim where the defendant argued its

5    written statement was literally true, holding **"the fact that the labels were literally true does**

6    **not mean they cannot be misleading to the average consumer."**).

7    110.    A CFA violation also does not require that the merchant be aware of the falsity

8    of the statement or that the merchant act with an intent to deceive. *See Gennari v. Weichert Co.*

9    *Realtors*, 691 A.2d 350, 365 (N.J. 1997):

10    **One who makes an affirmative misrepresentation is liable even in the**
     **absence of knowledge of the falsity of the misrepresentation,**
11   **negligence, or the intent to deceive... An intent to deceive is not a**
     **prerequisite to the imposition of liability.**
12

13    111.    Nor is it a defense to a CFA claim that the merchant acted in good faith. *See Cox*

14    *v. Sears Roebuck & Co.*, 647 A.2d 454, 461 (N.J. 1994) **("the Act [CFA] is designed to**

15    **protect the public even when a merchant acts in good faith."**).

16    112.    In the case at bar, Defendant's policy of placing a fictitious reference price and

17    inflated **"% Savings"** claim on the price tags of items offered for sale in its Nordstrom Rack

18    stores in New Jersey is a deceptive, misleading, and/or unconscionable commercial practice in

19    the sale of goods in violation of N.J.S.A. § 56:8-2 for the reasons set forth herein.

20    113.    This policy involves, *inter alia*, both misleading affirmative statements, the

21    knowing omission of material facts, and violations of regulatory standards.

22    114.    First, the practice of placing on price tags a fictitious reference price—a price

23    that does not reflect an actual price at which Defendant or anyone in New Jersey has actually

24    sold a substantial number of the same or similar items in the recent past, or offered such items

25    for sale for a significant period of time—and an inflated discount claim based on that fictitious

26    price, are both affirmative misleading and deceptive statements in the sale of goods in violation

27    of N.J.S.A. § 56:8-2.

28

CLASS ACTION COMPLAINT FOR
DAMAGES, INJUNCTIVE, AND                              - 25 -
DECLARATORY RELIEF

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1    115.   Second, Defendant knows that any reasonable New Jersey consumer who sees

2    the fake reference price and inflated discount on Defendant's tags will believe that the

3    reference price is an actual price at which either Defendant or some other retailer in New Jersey

4    actually offered the item for sale in the marketplace in the recent past, and that Defendant's sale

5    price represents an actual savings equal to the promised discount. Despite this, Defendant does

6    not place any statement or warning on or near the tag itself, or on or near the item itself, or

7    anywhere in the store, explaining that the reference price is simply a marketing tool created by

8    Defendant that does not represent an actual price at which the same, or even a similar item of

9    like quality, has been sold or offered for sale in the marketplace for any substantial length of

10   time.  Nor does Defendant inform customers that its claimed "**% Savings**" on its tags do not

11   actually result in those claimed savings realized by the consumer.  Thus, Defendant's policy

12   also involves knowing omissions of material fact in the sale of goods in violation of N.J.S.A. §

13   56:8-2.

14   116.   Finally, Defendant's policy as described herein is an unconscionable

15   commercial practice because it violates regulatory authority such as 16 C.F.R. § 233.1-2 and

16   N.J.A.C. § 13:45A-9.6, as set forth herein.

17   117.   Plaintiff and the class members reasonably and justifiably expected Defendant to

18   comply with applicable law, but Defendant failed to do so.

19   118.   As a direct and proximate result of these unlawful actions by Defendant,

20   Plaintiff and the classes have been injured and have suffered an ascertainable loss of money.

21   119.   As with other terms of the CFA, the term "ascertainable loss" is to be construed

22   liberally in favor of the consumer in order to carry out the CFA's broad remedial purposes. *See*

23   *In Union Ink Co., Inc. v. AT&T Corp.*, 352 N.J. Super. 617, 646 (App. Div. 2002) (holding that

24   the ascertainable loss "**requirement has been broadly defined as embracing more than a**

25   **monetary loss**").

26   120.   Thus, the CFA does not require a plaintiff to have suffered any out-of-pocket

27   loss. *See Union Ink*, 352 N.J. Super. at 646:

28   **[A] victim of consumer fraud must prove an 'ascertainable loss,'**

CLASS ACTION COMPLAINT FOR
DAMAGES, INJUNCTIVE, AND                              - 26 -
DECLARATORY RELIEF

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA  98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1       **N.J.S.A. 56:8-19, but that requirement has been <u>broadly defined as</u>**
      **<u>embracing more than a monetary loss</u>.**

2

3   (emphasis added).

4      121.   Indeed, a consumer has experienced an "ascertainable loss" within the meaning

5  of the CFA whenever the consumer fails to receive the bargain which was promised by the

6  seller. *See International Union v. Merck & Co.*, 384 N.J. Super. 275, 291 (App. Div. 2006):

7       **Ascertainable loss "has been broadly defined as more than a monetary**
      **loss" and encompasses situations where "a consumer receives less than**
8       **what was promised."**

9      122.   Speaking specifically as to the benefit of the bargain expected by a consumer

10  who purchases merchandise at a discount, the New Jersey Supreme Court in *Furst v. Einstein*

11  *Moomjy*, 182 N.J. 1, 13-14 (2004), held that **"[t]he 'expectation interest' of the consumer**

12  **who purchases merchandise at a discount is the benefit of the bargain."**

13      123.   Plaintiff suffered an ascertainable loss within the meaning of the CFA when she

14  failed to receive the full benefit of the bargain promised by Defendant.

15      124.   The purported discounts offered by Defendant were illusory because the

16  existence of the promised discounts was premised on Defendant's misleading and false

17  reference prices, and its representations that the actual value of the items were equal to those

18  prices.

19      125.   Under New Jersey law, the value of an item is presumed to be the price listed on

20  its price tag as the regular, typical price at which it is sold in the marketplace.

21      126.   By stating that the reference price of each item purchased by Plaintiff was

22  higher than the price at which the item was typically sold or offered for sale, Defendant

23  promised a bargain to Plaintiff in which she would receive items worth the reference price

24  claimed on Defendant's tags and would save the **"% Savings"** claimed on Defendant's tags. In

25  actuality, however, the true and actual value of these items was less than the false and inflated

26  reference prices, and Plaintiff did not save the amount of money claimed by Defendant.

27      127.   For example, the Sperry Top-Sider boat shoes purchased by Plaintiff Munning

28  bore a price tag that promised **"COMPARE AT $90.00"** and **"22% Savings"**. In reality,

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1    those statements of value and claimed discount were inflated by Defendant.  Plaintiff Munning

2    did not receive the benefit of Defendant's promise that she would be receiving shoes worth

3    $90.00 and savings of **"22%"**. The shoes were not typically sold in New Jersey by anyone for a

4    price as high as $90.00, and the shoes were worth less than $90.00; thus, Plaintiff Munning did

5    not actually realize a **"22% Savings"** when she purchased the shoes for $69.97.

6        128.    Similarly, the Tommy Hilfiger tie purchased by Plaintiff Munning bore a price

7    tag that promised **"COMPARABLE VALUE 69.50"** and **"71% Savings"**.  In reality, those

8    statements of value and claimed discount were inflated by Defendant.  Plaintiff Munning did

9    not receive the benefit of Defendant's promise that she would be receiving a tie worth $69.50

10   and savings of **"71%"**. The tie was not typically sold in New Jersey by anyone for a price as

11   high as $69.50, and the tie was worth less than $69.50; thus, Plaintiff Munning did not actually

12   realize a **"71% Savings"** when she purchased the tie for $19.97.

13       129.    With respect to omissions, Defendant at all relevant times had a duty to disclose

14   the information in question because, *inter alia*: (a) Defendant had exclusive knowledge of

15   material information that was not known to Plaintiff and the classes; (b) Defendant concealed

16   material information from Plaintiff and the classes; and/or (c) Defendant made partial

17   representations which were false and misleading absent the omitted information.

18       130.    Defendant's misrepresentations and nondisclosures deceive and have a tendency

19   to deceive the general public.

20       131.    Defendant's misrepresentations and nondisclosures are material, in that a

21   reasonable person would attach importance to the information and would be induced to act on

22   the information in making purchase decisions.

23       132.    As a direct and proximate result of these violations, Plaintiff and the classes

24   suffered injury-in-fact and lost money.

25       133.    Plaintiff and the classes paid more than they otherwise would have paid for the

26   products they purchased from Defendant's Nordstrom Rack stores and they bought more than

27   they otherwise would have bought from Defendant.

28       134.    Plaintiff and the Classes did not enjoy the actual discounts Defendant

CLASS ACTION COMPLAINT FOR
DAMAGES, INJUNCTIVE, AND                          - 28 -
DECLARATORY RELIEF

1    represented to them, and the products were not in fact worth the inflated amount that Defendant

2    represented to them (i.e., the products were not actually worth the fictitious and inflated

3    reference price).

4          135.    Defendant's false advertising scheme has harmed all of its customers by

5    fraudulently increasing demand for its products, thereby shifting the demand curve and

6    enabling Defendant to charge its customers more than it otherwise could have charged and to

7    generate more sales than it otherwise would have generated.

8          136.    Defendant's conduct alleged herein caused substantial injury to Plaintiff, the

9    classes, and the public. Defendant's conduct is ongoing and is likely to continue and recur

10    absent a permanent injunction.

11         137.    Pursuant to N.J.S.A. § 56:8-19, Plaintiff seeks, *inter alia*, actual damages, treble

12    damages, and injunctive relief for herself and for the classes.

13

14    **<u>COUNT II</u>**

**Violation of the New Jersey Truth in Consumer Contract, Warranty, and Notice Act**

15    **(N.J.S.A. § 56:12-14, *et seq.*)**

16         138.    Plaintiff realleges and incorporates by reference all paragraphs alleged

17    hereinbefore.

18         139.    Plaintiff and the class members are "consumers" within the meaning of N.J.S.A.

19    § 56:12-15.

20         140.    Defendant is a "seller" within the meaning of N.J.S.A. § 56:12-15.

21         141.    The price tags on the merchandise sold by Defendant bearing the reference

22    prices and claimed savings are consumer **"notices," "signs"** and/or **"warranties"** within the

23    meaning of N.J.S.A. § 56:12-15.

24         142.    By the acts alleged herein, Defendant has violated N.J.S.A. § 56:12-15 because,

25    in the course of Defendant's business, Defendant has offered, displayed and presented written

26    consumer notices, signs and warranties to Plaintiff and the classes which contained provisions

27    that violated their clearly established legal rights under state law and federal law, within the

28

CLASS ACTION COMPLAINT FOR
DAMAGES, INJUNCTIVE, AND
DECLARATORY RELIEF

- 29 -

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1   meaning of N.J.S.A. § 56:12-15.

2       143.   Specifically, the clearly established rights of Plaintiff and the classes under state

3   law include the right not to be subjected to unconscionable commercial practices and false

4   written affirmative statements of fact in the sale of goods, as described herein, which acts are

5   prohibited by the CFA, N.J.S.A. § 56:8-2.

6       144.   Further, the clearly established rights of Plaintiff and the classes under federal

7   law include the right not to be subjected to false advertising in violation of 16 C.F.R. § 233.2.

8       145.   Plaintiff and each class member are aggrieved consumers for the reasons set

9   forth herein, and specifically because, *inter alia*, each purchased item from Defendant bearing

10  the complained-of tags that set forth false reference prices and inflated discounts and suffered

11  an ascertainable loss under the CFA as described above.

12      146.   Pursuant to N.J.S.A. § 56:12-17, Plaintiff seeks a statutory penalty of $100 for

13  each class and sub-class member, as well as actual damages and attorneys' fees and costs. *See*

14  N.J.S.A. § 56:12-17, providing that a seller who violates the TCCWNA: **"shall be liable to the**

15  **aggrieved consumer for a civil penalty of not less than $100.00 or for actual damages, or**

16  **both at the election of the consumer, together with reasonable attorney's fees and court**

17  **costs."** *See also United Consumer Fin. Servs. Co. v. Carbo*, 410 N.J. Super. 280, 310 (App.

18  Div. 2009), affirming the trial judge's decision to award the $100 statutory penalty to each

19  class member under N.J.S.A. §56:12-17 of TCCWNA, stating:

20          [T]he $100 civil penalty is not unreasonably disproportionate when
            viewed in that context, whether it is considered with respect to an
21          individual consumer or the 16,845 consumers whose contracts included
            the prohibited fee. We note that when assessing the constitutional
22          reasonableness of punitive damage awards, courts are directed to
            consider and give "substantial deference" to judgments made by the
23          Legislature in fixing civil penalties. Nothing about the facts of this case
            or the numerosity of this class warrants a more searching evaluation of
24          the reasonableness of awarding the civil penalty selected by the
            Legislature to each member of this class.

25  (citation omitted).

26                                    **COUNT III**

27  **Breach of Contract Under the Implied Covenant of Good Faith and Fair Dealing**
                    **(All Statutory, Inherent, and Other Authority)**

28

1      147.    Plaintiff realleges and incorporates by reference all paragraphs alleged

2  hereinbefore.

3      148.    There was no written contract between Defendant and its customers, including

4  Plaintiff and the class members.

5      149.    Rather, by operation of the law of New Jersey, there existed an implied contract

6  for the sale of goods between Defendant and each customer who purchased items from

7  Nordstrom Rack stores in New Jersey.

8      150.    By operation of law, there existed an implied duty of good faith and fair dealing

9  in each such implied contract.

10     151.    By the acts alleged herein, Defendant has violated that duty of good faith and

11  fair dealing, thereby breaching the implied contract between Defendant and each class member.

12     152.    Specifically, it was a violation of the duty of good faith and fair dealing for

13  Defendant to falsely misrepresent the reference prices of the items offered for sale and the

14  associated discounts.

15     153.    As a direct and proximate result of Defendant's breach of the implied covenant

16  of good faith and fair dealing, Plaintiff and the class members have been injured and have

17  suffered actual damages in an amount to be established at trial.

18

19                    **COUNT IV**

           **New Jersey Uniform Declaratory Judgment Act**

20             **(N.J.S.A. § 2A:16-51, *et seq.*)**

21     154.    Plaintiff realleges and incorporates by reference all paragraphs alleged

22  hereinbefore.

23     155.    Plaintiff and the class need, and are entitled to, an order for injunctive and

24  declaratory relief:

25          a.    declaring that Defendant's uniform policy of placing fictitious reference

26  prices on the tags of merchandise, which are not based on actual prices offered or charged in

27  New Jersey in the recent past, to be a violation of New Jersey law;

28

CLASS ACTION COMPLAINT FOR
DAMAGES, INJUNCTIVE, AND
DECLARATORY RELIEF

- 31 -

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA  98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1           b.      declaring Defendant's uniform policy of placing false, inflated discounts

2    and false promised **"% Savings"** on the tags of merchandise to be a violation of New Jersey

3    law; and

4           c.      enjoining Defendant from continuing both of these policies.

5    156.    Plaintiff and the class members have a significant interest in this matter in that

6    each has been or will be subjected to the unlawful policies alleged herein.

7    157.    Defendant is continuing to engage in both of the policies alleged herein.

8    158.    Plaintiff is a long-time customer of Defendant's Nordstrom Rack stores and

9    would like to shop there again, but brings this suit to ensure that the reference prices and

10   promised **"% Savings"** listed on Defendant's price tags are genuine and not fictitious.

11   159.    Based on the foregoing, a justifiable controversy is presented in this case,

12   rendering declaratory judgment and injunctive relief appropriate.

13                                   **PRAYER FOR RELIEF**

14   160.    In order to prevent injury to the general public, Plaintiff LAURIE MUNNING

15   individually requests that the Court enter a public injunction enjoining Defendant from

16   advertising false reference prices and/or false discounts.

17   161.    Further, on behalf of herself and the proposed classes, Plaintiff requests that the

18   Court order relief and enter judgment against Defendant as follows:

19          a.      Declare this action to be a proper class action, certify the classes, and

20   appoint Plaintiff and her counsel to represent the classes;

21          b.      Find that Defendant's conduct alleged herein be adjudged and decreed in

22   violation of the New Jersey laws cited above;

23          c.      Order disgorgement or restitution, including, without limitation,

24   disgorgement of all revenues, profits and/or unjust enrichment that Defendant obtained, directly

25   or indirectly, from Plaintiff and the members of the classes or otherwise as a result of the

26   unlawful conduct alleged herein;

27          d.      Permanently enjoin Defendant from the unlawful conduct alleged herein;

28          e.      Retain jurisdiction to police Defendant's compliance with the permanent

CLASS ACTION COMPLAINT FOR
DAMAGES, INJUNCTIVE, AND                    - 32 -
DECLARATORY RELIEF

1    injunctive relief;

2            f.      Order Defendant to pay damages and restitution to Plaintiff and the

3    classes in an amount to be proven at trial;

4            g.      Order Defendant to pay punitive and exemplary damages to the extent

5    allowed by law;

6            h.      Declare that Defendant is financially responsible for notifying all class

7    members of Defendant's deceptive advertising, sales, and marketing practices alleged herein;

8            i.      Order Defendant to pay attorneys' fees, costs, and pre-judgment and

9    post-judgment interest to the extent allowed by law; and

10           j.      Provide all other relief to which Plaintiff and the classes may show

11   themselves justly entitled.

12

13   DATED this 6th day of October, 2019.

14                          Presented by:

15                          HATTIS & LUKACS

16                          By: _____

17                              Daniel M. Hattis
                                Daniel M. Hattis, WSBA No. 50428
18                              dan@hattislaw.com
                                Che Corrington, WSBA No. 54241
19                              che@hattislaw.com
                                HATTIS & LUKACS
20                              400 108th Avenue, Suite 500
                                Bellevue, WA 98004
21                              Tel: 425.233.8650
                                Fax: 425.412.7171
22                              www.hattislaw.com

23                          and

24                          DeNITTIS OSEFCHEN & PRINCE, P.C.
                            Stephen P. DeNittis, Esq. *(Pro Hac Vice forthcoming)*
25                          sdenittis@denittislaw.com
                            Shane T. Prince, Esq. *(Pro Hac Vice forthcoming)*
26                          sprince@denittislaw.com
                            5 Greentree Centre
27                          525 Route 73 North, Suite 410
                            Marlton, NJ 08053
28                          Tel.: (856) 797-9951

CLASS ACTION COMPLAINT FOR                          **HATTIS & LUKACS**
DAMAGES, INJUNCTIVE, AND          - 33 -         400 108th Avenue NE, Suite 500
DECLARATORY RELIEF                                   Bellevue, WA  98004
                                            T: 425.233.8650 | F: 425.412.7171
                                                    www.hattislaw.com

Fax: (856) 797-9978
www.denittislaw.com

Attorneys for Plaintiff Laurie Munning and the Proposed Classes

CLASS ACTION COMPLAINT FOR
DAMAGES, INJUNCTIVE, AND
DECLARATORY RELIEF

- 34 -

HATTIS & LUKACS
400 108th Avenue NE, Suite 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

# EXHIBIT A

# EXHIBIT A

 

EXHIBIT B

# EXHIBIT B

 

# EXHIBIT C

# EXHIBIT C



EXHIBIT D

# EXHIBIT D



# EXHIBIT E

# EXHIBIT E





